SINNOTT, PUEBLA, CAMPAGNE & CURET, APLC
Blaise S. Curet, #124983
bcuret@spcclaw.com
Randy M. Marmor, #074747
rmarmor@spcclaw.com
Two Embarcadero Center, Suite 1410
San Francisco, California 94111
Tel: (415) 352-6200; Fax: (415) 352-6224

Attorneys for Plaintiff PROASSURANCE
CASUALTY COMPANY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PROASSURANCE CASUALTY COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>SHLOMO RECHNITZ; BRIUS MANAGEMENT COMPANY, INC.; BRIUS, LLC; VERDUGO VALLEY SKILLED NURSING & WELLNESS CENTRE, LLC; CARL POPULUS; and DOES 1 - 50, inclusive,<br><br>Defendants. | Case No.  2:16-cv-08603<br><br>**COMPLAINT FOR RESCISSION, RECOUPMENT AND DECLARATORY RELIEF** |

Plaintiff ProAssurance Casualty Company ("ProAssurance") alleges as follows:

## I.

## **THE PARTIES**

1. Plaintiff ProAssurance Casualty Company ("ProAssurance") is a corporation organized under the laws of the State of Michigan with its principal place of business in Michigan.

2. Defendant Shlomo Rechnitz is a citizen and resident of the State of California.

**COMPLAINT FOR RESCISSION, RECOUPMENT AND DECLARATORY RELIEF**

3. Defendant Brius Management Company, Inc. is a corporation incorporated under the laws of the State of California with its principal place of business in Los Angeles, California.

4. Defendant Brius, LLC, is a limited liability company registered under the laws of the State of California and has its principal place of business in the City of Los Angeles, California.

5. Defendant Verdugo Valley Skilled Nursing & Wellness Centre, LLC ("Verdugo Valley"), is a limited liability company registered under the laws of the State of California and has its principal place of business in Montrose, California. Shlomo Rechnitz, Brius Management Company, Inc., Brius, LLC, and Verdugo Valley shall collectively be referred to as "Defendants."

6. Defendant Carl Populus is an individual who is a citizen of the State of California and a resident of the County of Los Angeles. Populus has been named as a defendant in this Complaint so that he will be bound by any judgment entered by the Court.

7. The true names and capacities, whether individual, corporate, associate or otherwise, of defendant Does 1- 50, inclusive, are unknown to ProAssurance, and ProAssurance therefore sues said defendants by such fictitious names. ProAssurance is informed and believes and thereon alleges that each of the defendants designated herein as a Doe is legally responsible in some manner to ProAssurance as it relates to the claims set forth in this Complaint. ProAssurance will seek leave to amend its Complaint to show the true names and identities of the Doe defendants when they have been ascertained.

8. Each named defendant and each fictitiously named defendant were the agents, partners, joint venturers, predecessors, successors, parents, subsidiaries, and/or employees of each of the other defendants and were at all times herein mentioned acting within the scope and course of such agency, employment or relationship.

## II.
## JURISDICTION AND VENUE

9. The subject matter of this Court is based upon 28 U.S.C. § 1332 due to the complete diversity of citizenship among the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claims that are the subject of this Complaint occurred within this District.

## III.
## NATURE OF THE ACTION

11. This action arises out of the tender of defense and indemnity of Defendants to ProAssurance of the action entitled *Carl Populus vs. Shlomo Rechnitz, et al.*, Los Angeles County Superior Court, Case No.: BC 577489 (the "Underlying Action").

13. ProAssurance accepted the Defendants' tender of defense of the Underlying Action pursuant to a reservation of rights of the terms and conditions of the LONG TERM CARE PROFESSIONAL LIABILITY INSURANCE AND COMMERCIAL GENERAL LIABILITY INSURANCE POLICY LTC 9410815, effective January 15, 2015 – January 15, 2016, issued by ProAssurance to its named insured, Verdugo Valley (the "ProAssurance Policy").

14. ProAssurance alleges that the ProAssurance Policy should be rescinded based upon material omissions and misrepresentations by Verdugo Valley to ProAssurance in the application for the ProAssurance Policy. Had ProAssurance known the true facts, set forth below, it would not have issued Verdugo Valley the ProAssurance Policy.

15. ProAssurance alleges that it has no duty to defend or indemnify Defendants in the Underlying Action based upon the material omissions and misrepresentations in the application for the ProAssurance Policy, as well as in

applications for prior policies, entitling ProAssurance to a rescission of the ProAssurance Policy.

16. Upon Judgment by the Court approving rescission of the ProAssurance Policy, ProAssurance will promptly return the full premium paid by Verdugo Valley for the ProAssurance Policy.

17. Upon Judgment by the Court approving rescission of the ProAssurance Policy, and a declaration that ProAssurance has no duty to defend or indemnify Defendants in the Underlying Action, ProAssurance requests the Court order that ProAssurance is entitled to recoupment from Defendants of all defense fees and costs it has paid in their defense in the Underlying Action according to proof.

## IV.

## THE UNDERLYING ACTION

18. On April 2, 2015, Carl Populus filed the Underlying Action against Defendants alleging causes of action for violation of residents rights under Health & Safety Code § 1430(b), wrongful death (negligence), dependent adult abuse and neglect (Welfare & Institutions Code § 15600, *et seq*.) and wrongful death (dependent adult abuse & neglect). The complaint in the Underlying Action is attached to this Complaint as Exhibit "A."

19. In the Underlying Action, Carl Populus alleges that he is the brother of James Populus, who was admitted to Verdugo Valley, a skilled nursing facility, on April 8, 2014, with a diagnosis of pneumonia. Populus alleges that over the next few months, he made several requests to have his brother James evaluated by a pulmonologist, as his breathing condition continued to decline. However, the facility allegedly made no attempt to address these requests and failed to provide care by having James' respiratory problems evaluated or treated.

20. Carl Populus alleges that James was not seen by a doctor from April 8, 2014, to at least June 2, 2014, and possibly not until the date of his discharge on August 24, 2014. Carl alleges that on August 24, 2014, at 6:20 a.m. a nurse

documented that James was not verbally responsive, was lethargic, congested and had labored breathing, a weak pulse, and an increased heart rate. The facility did not call 911 to obtain the necessary emergency medical services until 7:43 a.m. James was transferred by ambulance to Verdugo Hills Hospital, where he was intubated and put on a breathing machine. James died on August 30, 2014.

## V.

## THE PROASSURANCE POLICY

21. The ProAssurance Policy contains the following insuring agreement for professional liability:

> The company will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as **damages** and/or **claims expense** because of **bodily injury** to which this insurance applies arising out of a **professional incident** in the course of performing **professional health care services** to a **resident**.

22. The ProAssurance Policy contains the following provision regarding representations by Verdugo Valley in its application for the policy:

> 15. **REPRESENTATIONS:**
>
> By acceptance of this policy the **named insured** agrees that the statements in the Declarations including Additional Declarations, Supplemental Declarations and Application Materials are the **named insured's** agreements and representations, that this policy is issued in reliance upon the truth and completeness of such representations and that this policy embodies all agreements existing between the **named insured** and the Company or any of its agents relating to this insurance.

## VI.

## THE CITATION

23. On June 11, 2009, the California Department of Public Health issued a Class AA Citation to Verdugo Valley based upon violations of California Code of

1 Regulations Sections 72311(a) and 72515(b) relating to the patient care of Charles
2 Morrill (the "Citation").  Verdugo Valley was initially assessed a penalty of
3 $100,000, which it appealed and was eventually reduced to $45,000, which it paid.
4 A copy of the Class AA Citation and the disposition are attached as Exhibit "B."

5    24.    At no time prior to the issuance of the ProAssurance Policy did
6 Defendants advise ProAssurance of this Citation.

## VII.

## THE INDICTMENT

25.    On June 24, 2011, Verdugo Valley was indicted by the Grand Jury of the State of California in and for the County of Los Angeles and accused of the crime of dependent adult neglect resulting in death, in violation of Penal Code § 368(b)(1), a felony.  (the "Indictment.")  A copy of the Indictment is attached as Exhibit "C."

26.    The Indictment alleges that on and between January 22, 2009 and February 28, 2009, in the County of Los Angeles, Verdugo Valley  "did, under circumstances and conditions likely to produce great bodily harm and death, knowingly and willfully cause and permit Charles Morrill, a dependent adult, to suffer, and inflicted thereon, unjustifiable physical pain and mental suffering and, having the care and custody of said person, willfully caused and permitted him to be placed in the situation in which his health was endangered, and knew and reasonably should have known that said person, Charles Morrill, was a dependent adult."  The Grand Jury further charged that Verdugo Valley proximately caused the death of Charles Morrill.

27.    At no time prior to the issuance of the ProAssurance Policy did Defendants advise ProAssurance of the Indictment.

## VIII.

## THE SUPERSEDING INJUNCTION

28.    On December 2, 2011, the Los Angeles County Superior Court agreed

to dismiss the Indictment under Penal Code § 1385 based upon the joint stipulation for injunctive relief entered into by the State of California and Verdugo Valley.

29. On August 1, 2012, the State of California and Verdugo Valley entered into a Superseding Injunction to replace the Injunction previously issued on December 2, 2011 (the "Superseding Injunction"). The Superseding Injunction is attached as Exhibit "D."

30. In the Superseding Injunction, among other things, Verdugo Valley agreed to the following:

(a) Comply with all building and fire codes and applicable business and printing requirements;

(b) Comply with all abuse reporting requirements;

(c) Review and revise policies and procedures relating to the admission of residents;

(d) Develop and implement in-house service training for appropriate management of residents with developmental disabilities;

(e) Certification and approval for a Special Treatment Program in mental health;

(f) Take reasonable steps to retain psychiatric technicians and implement a plan to have at least one psychiatric technician present at all times;

(g) Comply with state-mandated staffing requirements;

(h) Implement a plan within sixty (60) days to have the facility monitored through video surveillance;

(i) Appoint a compliance officer;

(j) Perform internal audits and reviews;

(k) Choose an independent monitor to monitor compliance with the Superseding Injunction and make reports to the State of California on a quarterly basis;

(l) Agree to an expedited procedure for enforcement of the injunction in the case of violations.

31. At no time prior to the issuance of the ProAssurance Policy did Defendants advise ProAssurance of the Superseding Injunction.

## IX.
## THE ARREST

32. As a result of the death of James Populus, the Bureau of Medi-Cal Fraud and Elder Abuse conducted an investigation of the circumstances surrounding his death. On September 18, 2014, Anthony Baumgart, Special Agent for the Bureau of Medi-Cal Fraud & Elder Abuse, arrested nurse supervisor Connie Policarpio at Verdugo Valley on charges of dependent-adult abuse for her delay in calling 911 and making false entries in the medical records (the "Arrest").

33. At no time prior to the issuance of the ProAssurance Policy did Defendants advise ProAssurance that nurse supervisor Connie Policarpio had been arrested on charges of dependent-adult abuse for her delay in calling 911 and making false entries in medical records relating to the death of James Populus.

## X.
## THE APPLICATION FOR THE PROASSURANCE POLICY

34. The application for the ProAssurance policy, attached as Exhibit "E," asked the following questions:

> Section III – Claims/History
>
> If you answer yes to questions 1 and 2 below, attach a detailed explanation on Appendix A; if you answer yes to question 3 below, attach a detailed explanation on appendix B.
>
> …
>
> 2. Have you been the subject of investigatory or disciplinary proceedings or reprimanded by an administrative or governmental agency or professional association?
>
> 3. Are you aware of any claims or suits brought

---

COMPLAINT FOR RESCISSION, RECOUPMENT AND DECLARATORY RELIEF
8

> against you or any circumstances which may result in a claim or suit being made or brought against you?

Verdugo Valley answered "No" to the above questions, concealing the Class AA Citation, the Indictment, the Superseding Injunction, and the Arrest set forth above.

35. ProAssurance issued prior policies to Verdugo Valley, effective January 15, 2013 – January 15, 2014 and January 15, 2014 – January 15, 2015. The applications for these policies contained the same questions set forth above and Verdugo Valley provided the same answers. At no time prior to the issuance of the ProAssurance Policy did Defendants advise ProAssurance of the Citation, Indictment, the Superseding injunction, or the Arrest described above.

36. The application for the ProAssurance Policy contained a Sexual Misconduct Coverage Supplemental Application that asked the following question:

> 2. Has the applicant or any employee, volunteer, or other person working for the applicant ever been arrested or convicted of a crime? If yes, provide full details:

Verdugo Valley answered this question "No," failing to disclose the arrest of the supervising nurse in connection with the treatment and death of James Populus.

## **FIRST CAUSE OF ACTION**
### ( Rescission )

37. ProAssurance hereby incorporates and realleges the allegations in paragraphs 1 – 36 of this Complaint as if fully set forth herein.

38. In its application for the ProAssurance Policy, Verdugo Valley represented that it had not been the subject of an investigatory or disciplinary proceeding or reprimanded by an administrative or governmental agency or professional association. Defendants failed to disclose to ProAssurance the Citation, the Indictment, the Superseding Injunction, and the Arrest, as set forth above. These were material omissions and misrepresentations by Defendants to ProAssurance. If ProAssurance had known that the California Department of Public Health had issued the Citation, had assessed an initial $100,000 penalty, and that Verdugo Valley had

paid a final penalty of $45,000, had been Indicted by the State of California and had agreed to the Superseding Injunction, and that a supervising nurse had been arrested in connection with the death of James Populus, ProAssurance would not have issued the ProAssurance Policy.

39. In its application for the ProAssurance Policy, Verdugo Valley represented that it was not aware of any claims or suits brought against it or any circumstances which might result in a claim or suit being made or brought against it. Defendants failed to disclose to ProAssurance the Citation, Indictment, the Superseding Injunction, and the Arrest, as set forth above. These were material omissions and misrepresentations by Defendants to ProAssurance. If ProAssurance had known that the California Department of Public Health had issued the Citation, had assessed an initial $100,000 penalty, and that Verdugo Valley had paid a final penalty of $45,000, had been Indicted by the State of California and had agreed to the Superseding Injunction, and that a supervising nurse had been arrested in connection with the death of James Populus, ProAssurance would not have issued the ProAssurance Policy.

40. The failure of Defendants to disclose to ProAssurance the Citation and penalty, the Indictment, the Superseding Injunction and the Arrest were material to ProAssurance's decision to renew and issue the ProAssurance policy. If ProAssurance had known that the California Department of Public Health had issued the Citation, had assessed an initial $100,000 penalty, and that Verdugo Valley had paid a final penalty of $45,000, had been Indicted by the State of California and had agreed to the Superseding Injunction, and that a supervising nurse had been arrested in connection with the death of James Populus, ProAssurance would not have issued the ProAssurance Policy effective January 15, 2015 – January 15, 2016.

41. Based upon Defendants' material misrepresentations and concealment, set forth above, the ProAssurance policy is void *ab initio* as of the date of its inception, January 15, 2015.

42. ProAssurance is entitled to a judgment rescinding the ProAssurance policy *ab initio*, as of the date of its inception January 15, 2015.

43. Upon Judgment by the Court approving rescission of the ProAssurance policy, ProAssurance will promptly return the full premium paid by Verdugo Valley for the ProAssurance policy.

44. Upon Judgment by the Court approving rescission of the ProAssurance policy, ProAssurance is also entitled to a Judgment declaring that it has no duty to defend or indemnify Defendants in the Underlying Action.

## SECOND CAUSE OF ACTION
### (Recoupment of Defense Fees and Costs)

45. ProAssurance hereby incorporates and realleges the allegations in paragraphs 1 - 44 of this Complaint as if fully set forth herein.

46. Upon Judgment by the Court approving rescission of the ProAssurance policy, and Judgment declaring that ProAssurance has no duty to defend or indemnify Defendants in the Underlying Action, ProAssurance is entitled to recoup from Defendants all defense fees and costs it has paid in their defense in the Underlying Action according to proof.

## THIRD CAUSE OF ACTION
### (Declaratory Relief)

47. ProAssurance hereby incorporates and realleges the allegations in paragraph 1- 46 of this Complaint as if fully set forth herein.

48. There is at present an actual controversy between ProAssurance and Defendants concerning their respective rights and obligations under the ProAssurance policy and ProAssurance's request for rescission of that policy based upon concealment and material misrepresentations in the application, ProAssurance's duty to defend and/or indemnify Defendants in the Underlying Action, and ProAssurance's right to obtain recoupment of all defense fees and costs paid on behalf of Defendants in the Underlying Action should the Court rescind the

ProAssurance policy. Pro Assurance contends that:

    a.    The ProAssurance policy should be rescinded *ab initio*, based upon Defendants' misrepresentation and concealment of facts relating to the Citation and $45,000 penalty, the Indictment, the Superseding Injunction and the Arrest, as set forth above;

    b.    If the ProAssurance Policy is rescinded *ab initio,* ProAssurance has no duty to defend or indemnify Defendants in the underlying action;

    c.    If the ProAssurance Policy is rescinded *ab initio,* ProAssurance is entitled to recoup all defense fees and costs paid on behalf of Defendants in the Underlying Action.

49.    ProAssurance requests this Court declare the rights and obligations of the parties with regard to ProAssurance's request to rescind the policy *ab initio*, ProAssurance's duty to defend and indemnify Defendants in the Underlying Action, and ProAssurance's right to recoup all defense fees and costs paid in the Underlying Action.

WHEREFORE, ProAssurance prays for Judgment against Defendants as follows:

1.    That the Court declare that the ProAssurance policy is rescinded and *void ab initio*;

2.    That the Court declare that ProAssurance has no duty to defend or indemnify Defendants in the Underlying Action;

3.    That the Court order that ProAssurance is entitled to recoupment of all defense fees and costs paid in the defense of Defendants in the Underlying Action according to proof;

4.    That the Court adjudicate the rights and obligations of Does 1-50 with respect to the matters set forth in the Complaint;

5.    That the Court award ProAssurance its attorney's fees and costs in this action, as applicable and provided by law;

6. That the Court award ProAssurance such other and further relief as the Court may deem just and proper.

DATED: November 16, 2016      SINNOTT, PUEBLA,
CAMPAGNE & CURET, APLC

By:    /s/ Randy M. Marmor
RANDY M. MARMOR
Attorneys for Plaintiff PROASSURANCE CASUALTY COMPANY

PROASSURANCE\Verdugo Valley--359.003\Pleadings\Rescission Complaint (Federal) P002-Final.docx

SINNOTT, PUEBLA, CAMPAGNE & CURET, APLC
TWO EMBARCADERO CENTER, SUITE 1410
SAN FRANCISCO, CALIFORNIA 94111
TEL (415) 352-6200 · FAX (415) 352-6224

**COMPLAINT FOR RESCISSION, RECOUPMENT AND DECLARATORY RELIEF**
13